No. 45,007

Forrest W. Howard, *Appellee*, v. Clifford N. Stoughton and Best Cabs, Inc., *Appellants*.

(433 P. 2d 567)

Opinion filed November 13, 1967.

*Ralph B. Foster*, of Wichita, argued the cause, and *Leonard D. Munker* and *Vernon D. Just*, of Wichita, were with him on the brief for the appellants.

*Robert A. Coldsnow*, of Wichita, argued the cause, and *E. Lael Alkire, Richard B. Clausing, Aubrey J. Bradley, Jr., Fred. A. Beaty, Gillard Cohen* and *Harry L. Eddy*, of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

O'Connor, J.: The defendants, Clifford N. Stoughton and Best Cabs, Inc., have appealed from a judgment entered on the verdict, awarding the plaintiff, Forrest W. Howard, $13,518.06 for injuries and property damage sustained by him in an automobile-taxicab

collision in Wichita on October 25, 1961. Plaintiff, accompanied by his wife, was driving east on McCormick street, and Stoughton was proceeding north on Seneca street. The vehicles collided in the intersection, with the taxicab striking plaintiff's automobile on the right side. Liability was admitted prior to trial, and the case was tried on the issue of damages only.

The defendants raise various trial errors, as well as rulings on post trial motions, and also challenge the jury's verdict as having been rendered under the influence of passion and prejudice.

Defendants first complain that the trial court erroneously admitted evidence consisting of the testimony of the investigating officer, Edmond T. Dorr; that of Kenneth Razak, an expert witness; and the motion pictures and still photographs of the automobiles taken immediately after the collision. The thrust of defendant's argument is that this evidence was highly prejudicial, in that it pertained only to the issue of liability rather than damages. The plaintiff, on the other hand, seeks to justify the admission of such evidence on the theory that since the defendants vigorously contended throughout trial that plaintiff was not seriously injured, it became necessary to show the likelihood of injury, and how plaintiff's injuries were sustained as a result of the collision.

The deposition of Officer Dorr taken the Friday immediately preceding trial, and prior to the defendants' admitting liability, was read into evidence by the plaintiff. The officer identified a portion of a motion picture film taken immediately after the collision which showed only the vehicles. He likewise identified certain exhibits describing the location of the automobiles, the distances traveled by them after impact, as well as a diagram and chart that had been made from measurements taken at the scene. Dorr also testified about skid marks, braking speeds and reaction time, and gave his opinion of the speeds of the vehicles prior to the collision.

Mr. Razak, a consulting engineer, was called by the plaintiff and qualified as an expert in the fields of mechanical dynamics, structural analysis and engineering. His testimony explained experiments that had been made with respect to automobile accidents occurring at intersections and the effect of the various forces resulting therefrom upon an occupant's body. Using the salient facts and evidence, Razak described the forces which, in his opinion, were applied to the plaintiff's body at the time of this collision.

In response to a hypothetical question that included Razak's conclusions regarding the forces applied to plaintiff's body, Dr. Robert Rex Lee, plaintiff's physician, testified that the application of such forces "would have a marked contusion effect, bending, possibly tearing effect, and possible injury effect to the cartilage portion of the lumbosacral spine and of the cervical spine."

The court gave the following limiting instruction in its charge to the jury:

"You are instructed that the testimony contained in the deposition of Edmond Dorr, including the charts, film and photographs, was admitted in evidence by the Court, and can only be considered by you for the purpose of proving the injuries to the plaintiff, or the likelihood of injury to the plaintiff by virtue of the impact of the two vehicles. You cannot consider such evidence for any other purpose, since the defendants have admitted their negligence was the proximate cause of the injury to the plaintiff and damage to his property."

The testimony of Officer Dorr was relevant to show the nature and extent of damage to the cars from the impact, and it established a foundation for the testimony given by Mr. Razak. The court in its instruction carefully limited Dorr's testimony to the issue of damages, and under the circumstances, such admission was not error.

Defendants' assertion that the introduction of the motion pictures and still photographs taken therefrom injected undue prejudice and emotion in the minds of the jury is likewise unjustified. At most, the pictures illustrated the position of the automobiles, the damage to each when they came to rest, and were relevant to show the magnitude of the collision. Defendants' argument that the film emphasized the "distress, fear and shock" of the injured persons as well as "other dramatic and influencing scenes," is not borne out by the record. Approximately thirty-five seconds of the film were actually shown to the jury, and it would appear that the film was stopped prior to showing any of the individuals involved in the accident. The portion shown was identified by Officer Dorr as depicting "the positions of the cars after the accident." Still photographs and motion pictures, if shown to be a likeness of what they purport to represent, are, in the discretion of the trial court, admissible in evidence as aids to the jury in arriving at an understanding of the evidence, the location or condition of an object, or the circumstances of an accident when any such matter is relevant. (29 Am. Jur. 2d, Evidence §§785, 786; 32 C. J. S., Evidence §716. Also, see,

*Millers' Nat. Ins. Co., Chicago, Ill. v. Wichita Flour M. Co.,* 257 F. 2d 93 [10th Cir. 1958].) We find no abuse of discretion in the admission of the pictures.

Defendants further predicate error on the admission of Razak's testimony. No complaint is made that he was not qualified as an expert. The only objection lodged at trial and now urged is that he was not qualified to testify about injuries to the human body, and further, that his testimony was not germane to the issue of damages. We do not agree. A reading of the record discloses that Razak's testimony was confined to the application of force systems to the human body resulting from an intersection collision. It was Dr. Lee who testified concerning the effect of these forces upon the body, and his conclusions tended to confirm the nature and extent of the injuries complained of by the plaintiff. The defendants throughout the case strenuously denied that plaintiff suffered any serious injuries in the accident, and the testimony of their medical expert tended to support their position. To overcome such defense, plaintiff's counsel employed the trial technique of showing by expert testimony the likelihood of injury and the manner in which plaintiff's injuries were sustained.

The record discloses that Razak, as a part of his experience and training, was familiar with the analyses and results of experiments conducted with vehicles in intersection collisions of this nature. As a basis for his conclusions he was aware of the contents of Officer Dorr's deposition, and he had studied the chart, diagram and pictures previously mentioned. In addition, he had read the discovery deposition of the plaintiff describing the position of the car seat and plaintiff's body after the impact. Although Razak was asked a hypothetical question containing only a portion of these facts, it appears that he had knowledge of substantially all the material facts necessary to afford him a reasonably accurate basis for his conclusions.

The qualifications of an expert witness and the admissibility of his testimony are matters within the sound discretion of the trial judge. (*Taylor v. Maxwell,* 197 Kan. 509, 419 P. 2d 822.) There is no requirement that questions be hypothetical in form when an expert witness is presented the facts in some other acceptable manner. (K. S. A. 60-458; Gard, Kansas Code of Civil Procedure, §458.) He may render an opinion based on facts or data within his personal knowledge or observation, or made known to him at the hearing. (K. S. A. 60-456[b]; *Van Welden v. Ramsay's, Inc.,* 199

Kan. 417, 430 P. 2d 298.) In this state expert testimony relating to automobile accidents has been held admissible in the discretion of the trial court. (*McElhaney v. Rouse,* 197 Kan. 136, 144, 415 P. 2d 241, and cases cited therein. Also, see, *Campbell v. Clark,* 283 F. 2d 766 [10th Cir. 1960].)

Under the facts and circumstances presented here, we are unable to say that the admission of Razak's testimony was erroneous.

Before we turn our attention to the remaining points, a resumé of plaintiff's evidence regarding his injuries and damages is deemed appropriate.

In describing the collision, Howard stated that after his car stopped he found himself eighteen inches to two feet out of the left door, still sitting on the seat, which had also protruded from the left side of the car—his arms and shoulders remaining on the inside, his hands still holding the steering wheel. As a result of the collision Howard was hospitalized for approximately two weeks and received treatment for his injuries—a twisted back, pain in the shoulders, neck, arms, and right leg and hip. This was followed by a recuperation period at home for several weeks, during which time he experienced considerable difficulty in getting in and out of bed. Howard remained under the care of Dr. Lee and received weekly treatments through June 1962. He was released in August to return to work. Total medical expenses incurred were $476.56.

Plaintiff was forty-five years of age at the time of the accident. His occupation was that of flight-line mechanic. He had been employed at an aircraft plant for approximately ten years, his hourly wage being $2.50; but at the time of the accident he was unemployed, having voluntarily terminated his employment about three weeks previously. After the accident, efforts on his part to perform labor resulted in an aggravation of his condition. Unable to find employment in the Wichita area in his line of work because of his condition, Howard moved out of the state. During the years 1962 to 1964 he held several different jobs on a temporary basis, but because he was not able to do the same type of work, or be as active as he had been prior to the accident, his income was reduced appreciably. In 1961 his income was $3,571.02, but in 1962 and 1963 he earned only $229.56 and $400, respectively.

At the time of trial plaintiff still complained of headaches and pain, which bothered his shoulders, back and head, and at the most

severe stages prevented him from turning his head. He was taking analgesics two or three times a day to relieve the condition.

Dr. Lee described plaintiff's complaints and disability as resulting from a whiplash injury and lumbosacral sprain attributable to the accident. Although Dr. Lee had seen the plaintiff for some time prior to the accident, he had never treated him for any back complaints. Dr. Lee pointed out that plaintiff had a pre-existing arthritic condition which would cause his disability to be more severe from the injuries sustained in the accident than in the case of injury to a normal spine. Dr. Lee was of the opinion that there was a possibility a fusion might be required on either the cervical or lumbosacral spine if a muscle loss developed in those areas, the cost of the surgery being from $900 to $2000.

In contending the verdict was rendered under the influence of passion and prejudice, the defendants complain specifically of three evidentiary matters: (1) the showing of the motion pictures, (2) testimony of plaintiff's wife relating to her condition upon leaving the hospital, and (3) evidence of plaintiff's dire financial condition previous to and at the time of the accident. The first point has already been discussed. The second point is without substance for the reason Mrs. Howard testified only that she was unable to aid her husband when they both left the hospital, and this evidence was elicited without objection. (K. S. A. 60-404.) The third contention is patently untenable in view of the record, and merits no discussion.

We cannot accept defendants' suggestion the verdict was so excessive as to indicate passion and prejudice on the part of the jury, and thus required a remittitur. The evidence already detailed adequately demonstrates the nature and extent of the plaintiff's injuries and his resultant damages. The rules for testing a verdict when challenged as being excessive were stated in *Domann v. Pence,* 183 Kan. 135, 325 P. 2d 321, and have been consistently adhered to in many of our subsequent decisions (*e. g., Neely v. St. Francis Hospital & School of Nursing,* 188 Kan. 546, 363 P. 2d 438; *Kettler v. Phillips,* 191 Kan. 486, 382 P. 2d 478; *Slade v. City Cabs, Inc.,* 193 Kan. 105, 392 P. 2d 127).

All the points briefed and argued, including the denial of defendants' motion for new trial, have been considered, but we think what has been said effectively governs the disposition of this case.

The judgment is affirmed.