(782 P.2d 1246)

No. 63,290

STATE OF KANSAS, *Appellee*, v. VERNON L. LIEURANCE, *Appellant*.

Opinion filed November 22, 1989.

*Leslie F. Hulnick* and *Geary N. Gorup*, of The Law Offices of Leslie F. Hulnick, P.A., of Wichita, for the appellant.

*Mona Furst*, assistant district attorney, *Nola Foulston*, district attorney, and *Robert T. Stephan*, attorney general, for the appellee.

Before ABBOTT, C.J., DAVIS, J., and JOHN E. SANDERS, District Judge, assigned.

ABBOTT, C.J.: This is a direct appeal by the defendant, Vernon L. Lieurance, from his conviction for driving under the influence, contrary to K.S.A. 1987 Supp. 8-1567(a)(1). Defendant's breath test result was .234.

## 1. Verification by a Notary

Lieurance argues that the complaint, in this case, was not sufficient because it was not sworn to before a judge. The trial court held that *State v. Fraker*, 12 Kan. App. 2d 259, 739 P.2d 940 (1987), *modified* 242 Kan. 466, 748 P.2d 868 (1988), does not require the complaint to be sworn to before a judge and that a notary is sufficient.

The language of the statutes does not require the complaint to be sworn to before a judge. K.S.A. 1987 Supp. 8-2104(d) requires that the accused be taken before a judge without unnecessary delay. K.S.A. 22-2301(1) requires that the complaint be filed with a magistrate to commence prosecution. The only requirement as to swearing to the complaint is in K.S.A. 1987 Supp. 22-2202(8), which merely requires the complaint to be "under oath." It does not say the oath needs to be taken before a judge. These statutes allow the complainant to swear to the complaint and then file it with the court.

Lieurance relies on the Supreme Court's statement in *State v. Fraker* that the citation/complaint failed because "it is not sworn to by the complainant before the judge." 242 Kan. at 468. He argues this requires that the complaint must actually be sworn to in the presence of a judge.

*Fraker* should not be interpreted as requiring the complaint to actually be verified before a judge. K.S.A. 54-101 allows oaths to be administered by "[n]otaries public, judges of courts . . ., mayors . . ., clerks of courts of record, county clerks, and registers of deeds." In *Fraker*, the court also said a "DUI must be commenced with the filing of a verified complaint." 242 Kan. at 467. There simply was not a sworn complaint in *Fraker*. "[S]worn to . . . before the judge" (242 Kan. at 468) merely means that the complaint needs to be sworn to and then filed with the court.

Lieurance also argues that the notary who took the deputy's oath was also a deputy and that this should invalidate the complaint. The record does not show the notary to be a deputy. It

would not matter, however, whether the notary was a deputy as the statutes do not preclude a notary who is a deputy from administering an oath.

Shortly after *Fraker* was decided, the legislature again amended 8-2104 and 8-2106. See K.S.A. 1988 Supp. 8-2104(a); 8-2106(a) and (e). K.S.A. 1988 Supp. 8-2104 still requires a person charged with a DUI to be taken before a judge. K.S.A. 1988 Supp. 8-2106 now allows any offense under the Uniform Act Regulating Traffic to be charged by a citation, presumably followed by the filing of an information under K.S.A. 22-2303. Subsection (e) of K.S.A. 1988 Supp. 8-2106 precludes release of a DUI defendant on a written promise to appear.

These new sections took effect on July 1, 1988. Lieurance was arrested on April 15, 1988. The complaints were filed on April 19, 1988. Lieurance filed his motion to dismiss on August 12, 1988, after the new statutes took effect. Although procedural and remedial statutes may be given retrospective application (see *State v. Nunn*, 244 Kan. 207, 216, 768 P.2d 268 [1989]), retrospective application would not be appropriate under the circumstances before us. Generally, even procedural statutes are not retrospectively applied to proceedings that have already taken place. In fact, the State does not argue for retrospective application.

Another related argument is that nothing in the record shows an appearance before a court until April 29, 1988, when Lieurance was arraigned and pled not guilty. The complaints were filed with the court on April 19, 1988. The language of K.S.A. 1987 Supp. 8-2104(d) is unambiguous; the officer "shall" take the person into custody and then before a judge without unnecessary delay.

Lieurance certainly was taken into custody, but he did not stay in jail until arraignment on April 29. The docket shows that he was released on $500 bond, and at oral argument it was conceded that he was released on bail shortly after the breath test.

The requirement that a DUI defendant be taken before a judge is an obvious attempt to comply with constitutional requirements. *Gerstein v. Pugh*, 420 U.S. 103, 125, 43 L. Ed. 2d 54, 95 S. Ct. 854 (1975), holds that there must be a probable cause determination after a warrantless arrest when the defendant is to be held in custody for more than a short period. Here, Lieurance does not claim he was detained for an extended period. Taking

Lieurance before a judge would have been pointless. If there was noncompliance with the statute, it was harmless. So long as he was promptly released, he suffered no prejudice from not being taken before a judge.

The procedure used to arrest Lieurance was sufficient. It met both statutory and constitutional requirements.

## 2. Probable Cause Determination

Lieurance argues that the arrest and charging procedure in this case deprived him of his Fourth and Fourteenth Amendment rights under the United States Constitution. He cites several United States Supreme Court cases concerning warrantless arrests in houses—all of which are irrelevant. This is an arrest with probable cause in a public place, which does not require a prior judicial determination of probable cause. See *United States v. Watson*, 423 U.S. 411, 46 L. Ed. 2d 598, 96 S. Ct. 820 (1976). Kansas statutes also grant authority for such an arrest. See K.S.A. 22-2401. See also *State v. Miesbauer*, 3 Kan. App. 2d 53, 588 P.2d 953 (1979) (holding that an officer may arrest a DUI suspect with probable cause pursuant to 22-2401).

Lieurance also argues that in any event a probable cause determination is necessary after the arrest. He argues that *Gerstein v. Pugh*, 420 U.S. 103, 43 L. Ed. 2d 54, 95 S. Ct. 854 (1975), stands for the proposition that a pretrial probable cause hearing must be held whenever the defendant is subject to restraint pending trial. As stated above, Lieurance was released and thus there was no constitutional violation. Even if he was held in custody and there was a violation of his right to a probable cause determination, it is irrelevant. *Gerstein* holds that "illegal arrest or detention does not void a subsequent conviction." 420 U.S. at 119. See *United States v. Bohrer*, 807 F.2d 159 (10th Cir. 1986).

Lieurance's due process challenge must also fail. He has not shown he was prejudiced in any way at trial.

## 3. Venue

Lieurance argues that the State did not establish venue because no one actually said that the streets Kellogg, Armour, and Post Oak are in Sedgwick County, Kansas. It does not appear that Lieurance raised this at trial. Failure to make timely objection

waives venue. See Barbara, *Kansas Criminal Law Handbook* § 2.7 (1987). In any event, there is ample proof of venue.

"It is not necessary to prove the jurisdictional facts of venue by specific questions and answers to establish the county in which the offense occurred. [Citation omitted.] Under K.S.A. 60-409 the trial court can take judicial notice . . . [of venue]. [Citation omitted.] Venue is a fact to be determined by the jury and may be proven by circumstantial evidence." *State v. Deutscher*, 225 Kan. 265, 272, 589 P.2d 620 (1979).

A finding of venue by a Sedgwick County court when a Sedgwick County deputy testifies about an occurrence while he was on patrol, along with the mention of Kellogg, Armour, and Post Oak Streets, is based on substantial competent evidence.

### 4. Intoxilyzer Results

Lieurance correctly observes that, to introduce the results of a breath test, the prosecution must lay a foundation showing that the testing machine was operated according to the manufacturer's operational manual and any regulations set forth by the Department of Health and Environment. See *City of Shawnee v. Gruss*, 2 Kan. App. 2d 131, 576 P.2d 239, *rev. denied* 225 Kan. 843 (1978) (citing K.A.R. 28-32-1). He suggests several points where he thinks the trial court erred in finding adequate foundation for admission of the test results.

Whether an adequate evidentiary foundation was laid is a question of fact for the trial court and largely rests in its discretion. *State v. Woolridge*, 2 Kan. App. 2d 449, 450, 581 P.2d 403, *rev. denied* 225 Kan. 846 (1978). So long as there is substantial competent evidence to support the finding, it will not be disturbed on appeal.

First, Lieurance argues that, according to Department of Health and Environment regulations, the defendant must be observed for twenty minutes prior to administering the test. He argues that the testimony was conflicting about the amount of time the deputy observed him. The deputy testified several times that he observed Lieurance in excess of twenty minutes.

In *Gruss*, a similar claim was made by the appellant on similar evidence. The court said:

"[W]hether the appellant actually was observed for twenty minutes is a question of fact to be resolved by the trial court. The officer's testimony that he did watch the defendant for twenty minutes constitutes substantial,

competent evidence supporting that finding of fact and it, therefore, will not be disturbed on review." 2 Kan. App. 2d at 133.

Next, Lieurance argues that part of the required foundation is that both the testing officer and the machine itself must be certified by the Department of Health and Environment. *Gruss* and K.A.R. 28-32-1 do so require. Lieurance argues that the documents introduced at trial to show this certification were improperly introduced.

There was some confusion at trial over what was needed to admit the certificate on the Intoxilyzer. The State tried to introduce a copy of the certification of the machine. The judge ruled that the original had to be produced. K.S.A. 1988 Supp. 60-467(a)(5) allows copies of official records to be used in place of the original. K.S.A. 60-465 requires some form of authentication that it is a correct copy.

At trial, the State eventually obtained the original certificate for the Intoxilyzer. The sheriff's deputy testified that he was able to recognize the document as the original. The deputy clearly recognized the document for what it was. The only necessary foundation was to establish that it was what it claimed to be. The deputy's testimony was substantial competent evidence upon which the trial court could rely.

Lieurance also challenges admission of the certificate showing that the deputy was certified to use the Intoxilyzer. The original certificate was produced by the deputy who testified he knew it was the original. Again, this is the only foundation required, and it was well within his range of personal knowledge. It was properly admitted into evidence.

Next, Lieurance argues the deputy testified that the inspections of the Intoxilyzer were not done as required. Actually, the deputy testified he was not aware when the last State inspection was done and the last time he personally saw an inspection was "a couple of years ago." The Intoxilyzer had been certified by the State; the deputy was merely saying when he last saw it inspected.

Lieurance argues that the standard test solution used to ensure accuracy was not reliable because the deputy had no way of knowing once it was added to the machine that it was not used more than the maximum of fourteen times. In fact, the deputy testified that, every time the machine was used, the test was

logged on a sheet to ensure that it was only used the proper number of times. Again, this procedure was within the deputy's personal knowledge and was substantial competent evidence that the trial court could rely on when it admitted the test results. Calling all officers with access to the machine would be unreasonable and probably impossible. Likewise, the certification of the test solution itself and the procedure for adding it to the machine were subjects of the deputy's testimony, within his range of knowledge, and presented substantial competent evidence for the trial court to rely on.

Finally, Lieurance argues that the Intoxilyzer results, ".234," were not explained to mean grams of alcohol per 210 liters of breath. Lieurance did not raise this at trial, so it cannot be raised on appeal. "Issues not presented to the trial court will not be considered for the first time on appeal." *State v. Anderson*, 12 Kan. App. 2d 342, Syl. ¶ 1, 744 P.2d 143 (1987).

Affirmed.