No. 75,945

STATE OF KANSAS, *Appellee*, v. LESLIE ANN STRAND, *Appellant*.

933 P.2d 713

Opinion filed March 7, 1997.

*Roger D. Struble*, of Blackwell, Blackwell & Struble, Chtd., of Salina was on the brief for appellant.

*Julie A. McKenna*, county attorney and *Carla J. Stovall*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: Leslie Strand appeals her felony conviction under K.S.A. 1996 Supp. 8-1567(a)(2) for having an alcohol concentration greater than .08 within 2 hours of operating a vehicle, and the sentence resulting therefrom.

Slightly after 1 a.m. on April 6, 1995, Strand was arrested for driving under the influence (DUI) following a traffic violation for speeding. The police administered a breath test using an Intoxilyzer 5000 device. Officer Randy Jennings, who was properly trained and certified by the State of Kansas Department of Health and Environment (KDHE) pursuant to K.S.A. 65-1,109 to test human

breath for alcohol, followed the standard procedures for administering the breath test. The test showed a blood alcohol concentration of .128. Strand possessed two prior DUI convictions and requested a jury trial.

At trial, Lieutenant Darrell Fiske testified that he maintains the Intoxilyzer device, keeps its records, and is certified to operate the machine. He said the KDHE requires Intoxilyzer 5000 devices to be certified each year and to pass an annual inspection. Additionally, Fiske stated he must run two tests on the instrument once each week with a known solution at a specified temperature to check its accuracy.

Fiske testified the Intoxilyzer 5000 device used to test Strand was certified for 1995 and checked for accuracy as required by State regulations on March 31, 1995, and on April 7, 1995.

On cross-examination, Fiske admitted the Intoxilyzer 5000 device was sent in for maintenance to an authorized repair shop on February 20, 1995, to replace some processors that had been damaged by an electrical spike. The machine was not reinspected after repairs were completed, but was tested by Fiske and found to be working accurately before being placed back in service.

Fiske declared that certification was not lost just because the device was sent in for repairs. However, Strand objected to the admission of the breath test results on the ground that the instrument had not been recertified. The court overruled the objections and admitted the .128 breath test results. The jury returned a guilty verdict.

After her motion for judgment of acquittal was denied, Strand requested a sentence of house arrest pursuant to K.S.A. 21-4603b at the sentencing hearing. The court found the State had established the requisite two prior offenses with the current offense being the third, and imposed a minimum fine of $1,000, and a sentence of 12 months' imprisonment in the custody of the Saline County Sheriff. The sentence was suspended. The court continued the hearing for a determination of the terms and conditions of the proposed house arrest program.

At the sentencing hearing 1 week later, the parties again considered K.S.A. 21-4603b, and Strand argued for imposition of house

arrest. The trial court considered both statutory guidelines and sentencing statutes but ultimately determined that a house arrest program was not an available sentence and ordered Strand into custody to serve the mandatory 90 days of her sentence.

Strand appealed, contending the blood alcohol test results were improperly admitted and the sentence was improperly imposed. Our jurisdiction is pursuant to K.S.A. 20-3018(c).

The first issue before us on review is a question of law involving the interpretation of regulations promulgated by the KDHE, over which we have unlimited review. See *State v. Donlay*, 253 Kan. 132, Syl. ¶ 1, 853 P.2d 680 (1993); *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991).

The State's contention that Strand did not raise this issue below is without merit. The record clearly shows Strand's objection to the precise issue raised on appeal.

Strand, however, cites no compelling authority for the proposition that a breath alcohol testing device must be recertified following repairs. The KDHE's regulations provide in K.A.R. 28-32-1(a)(1) that each law enforcement agency shall apply for certification of test equipment and in (b)(4) that the reliability of test equipment and devices shall be assured by weekly testing with alcohol standards furnished by the KDHE and monthly reporting of the results.

Further, K.A.R. 28-32-4 provides in (a) that each law enforcement agency meeting the standards for test equipment and procedures, as determined by the KDHE, shall receive an annual certificate, which under (b) shall expire at 12 o'clock midnight on December 31 of the year it is issued.

Additionally, K.A.R. 28-32-5 states:

"(a) In order to perform evidential breath alcohol tests for law enforcement purposes; a person:

(1) shall be a duly appointed Kansas law enforcement officer . . . ;

(2) shall receive adequate training . . . ;

(3) shall successfully test four proficiency test specimens . . . ; and

(4) . . . shall successfully complete a written examination prescribed by the department of health and environment.

"(b) An operator holding a valid certificate to perform evidential breath alcohol tests for law enforcement purposes on December 31 of the year of its issue, may be recertified . . . ."

The duly issued certificate from the KDHE for the Salina Police Department's operation of the Intoxilyzer 5000 device was admitted into evidence. The State also admitted the certificates of the two testifying officers, Jennings and Fiske.

In addition, the test results from the weekly alcohol samples of known percentages obtained prior to and after Strand's arrest were admitted into evidence. This evidence demonstrated that the Intoxilyzer 5000 device was operating within the KDHE's specified limits and that the required weekly testing had been performed.

The record is clear that the Salina Police Department satisfied all requirements of the administrative regulations to maintain certification of its testing device. The equipment was sent to an authorized service center for repair pursuant to the manufacturer's directions. The reliability of the instrument was tested before being placed back into service and weekly thereafter, according to the State's requirement. The evidence clearly demonstrates the machine was operating properly and conformed to the KDHE's specifications.

No regulations exist requiring recertification of a testing device following repair. The trial court would not have been justified in inserting such a requirement deemed unnecessary by the agency having expertise over the certification procedure. We hold there is no requirement that the State reinspect a breath testing device following repairs in order to maintain certification so long as the device continues to meet the specifications required by the KDHE. We find Strand's breath test was properly admitted following a sufficient evidentiary foundation, see *State v. Rohr*, 19 Kan. App. 2d 869, 878 P.2d 221 (1994), and Strand's conviction is supported by substantial competent evidence.

The second issue raised by Strand concerns her sentence. Strand asked that she be sentenced to house arrest under K.S.A. 21-4603b, and neither party presented to the court the specific provisions of K.S.A. 1996 Supp. 8-1567. The court held that because the DUI statute mandates a minimum 90-day sentence to be served in the custody of the county sheriff, an alternative house arrest program was not available because it would place defendants under the supervision of either the Secretary of Corrections or the court. In

denying house arrest, the court considered that the Saline County Sheriff had not implemented a house arrest program.

A trial court's interpretation of the house arrest statute and the sentencing provisions are questions of law over which our review is unlimited.

The State concedes that house arrest is available under K.S.A. 1996 Supp. 8-1567(g) in situations such as the one here and that this case must be remanded for sentencing. Additionally, several recent Court of Appeals decisions held the penalty provisions for felony DUI convictions are controlled by the specific requirements of K.S.A. 1996 Supp. 8-1567(f) and not the Kansas Sentencing Guidelines Act. See *State v. Binkley*, 20 Kan. App. 2d 999, 894 P.2d 907 (1995), and *State v. Webb*, 20 Kan. App. 2d 873, 893 P.2d 255 (1995).

K.S.A. 1996 Supp. 8-1567(g), which must be read with (f), states:

"On a second or subsequent conviction of a violation of this section, the court may place the person convicted under a house arrest program, pursuant to K.S.A. 21-4603b, and amendments thereto, to serve the remainder of the minimum sentence only after such person has served 48 consecutive hours' imprisonment."

In *State v. Scherzer*, 254 Kan. 926, 935, 869 P.2d 729 (1994), we concluded the legislature did not intend for house arrest to be a form of imprisonment, but rather provided it as an alternative disposition. In deciding that house arrest was not an available disposition under K.S.A. 1992 Supp. 21-3405b(b)(2), Justice Lockett recognized in *Scherzer* that K.S.A. 8-1567 does permit defendants to be placed under house arrest after they have served a specified number of hours of imprisonment. 254 Kan. at 937. We were not required to interpret K.S.A. 8-1567 in *Scherzer*, but the fact that we used its provisions as a basis for a comparison to support our finding that house arrest was not available to Scherzer persuasively indicates that house arrest is available for felony DUI's.

Another persuasive authority, Att'y Gen. Op. No. 93-109, while advising that house arrest is not a form of imprisonment, specifically noted that 90 days' imprisonment is mandated upon a third or subsequent offense, "unless the court avails itself of the subsection (g) house arrest exception. In that event, the court may place

the convicted person in a house arrest program, as an alternative to imprisonment, only 'after such person has served 48 consecutive hours' imprisonment.' " The opinion concluded that the mandatory 48 hours cannot be served under a house arrest program.

Although the trial court correctly ruled that house arrest is not imprisonment, the court failed to recognize that the sentencing scheme permits an alternative disposition of house arrest following the minimum 48 consecutive hours of imprisonment. As far as its decision was based on this ground, the trial court must be reversed.

In addition, likely as a result of its conclusion that the mandatory sentence could only be served by imprisonment in the custody of the county sheriff, the court emphasized the fact that the Saline County Sheriff had not implemented a house arrest program in deciding that disposition was unavailable. Under the statutes, this is an erroneous consideration.

K.S.A. 21-4603b(a) provides that "[t]he court . . . may implement a house arrest program for defendants or inmates being sentenced by the court." K.S.A. 21-4603b(b) states that "[h]ouse arrest is an individualized program in which the freedom of an inmate is restricted." Thus, there appears to be no requirement that the sheriff of the county must implement a house arrest program before the court may order such a sentence. The house arrest statute allows trial courts to establish individualized programs for defendants, regardless of whether the Secretary of Corrections or individual counties have implemented such programs.

Based on these factors and the agreement of the parties, the trial court should consider Strand's suggested program in light of the fact that the legislature has specifically provided for alternative sentencing of house arrest upon a second or subsequent DUI conviction.

For these reasons, Strand's conviction is affirmed, but the sentence of the trial court is vacated, and the case is remanded for sentencing in accord with the provisions of K.S.A. 1996 Supp. 8-1567(f) and (g).