No. 76,520

STATE OF KANSAS, *Appellant*, v. ELMER J. MUCK, *Appellee*.

(939 P.2d 896)

Opinion filed May 30, 1997.

*Thomas K. Stanton*, assistant county attorney, argued the cause, and *Steven C. Staker*, assistant county attorney, *Julie McKenna*, county attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellant.

*James L. Sweet*, of Sweet & Sheahon, of Salina, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This case addresses the foundational requirements for the admission of the result of a breath alcohol test and the interplay between the granting of defendant's motion for a mistrial and double jeopardy. The State appeals the granting of a mistrial and dismissal with prejudice of the DUI charge against defendant Elmer J. Muck. The State failed to produce the arresting officer's 1995 certification card for using the Intoxilyzer 5000 breath test instrument. Our jurisdiction is under K.S.A. 22-3602(b)(1) (appeal from an order dismissing a complaint).

The two issues are whether the trial court erred in: (1) ruling that Trooper Dave Weed's current (1996) Intoxilyzer 5000 certification card was an insufficient foundation for the admission of the results of Muck's breath alcohol test given in 1995, and (2) declaring a mistrial and dismissing the case with prejudice. In resolving the first question, the State requests us to disapprove *State v. Rohr*, 19 Kan. App. 2d 869, 878 P.2d 221 (1994).

We affirm the certification card foundation and mistrial rulings but remand for a specific finding under *Oregon v. Kennedy*, 456 U.S. 667, 72 L. Ed. 2d 416, 102 S. Ct. 2083 (1982). We approve *Rohr*.

## FACTS

Trooper Weed of the Kansas Highway Patrol stopped Muck after observing his pickup moving well below the speed limit, straddle the center line, and swerve. Weed could smell alcohol on Muck's breath. Muck had to lean against the pickup to maintain his balance. He needed Weed's assistance in retrieving his driver's license. Muck agreed to submit to a breath alcohol test. The results of the test administered by Weed showed a blood alcohol concentration of .184. Muck was charged with driving under the influence (DUI), K.S.A. 1996 Supp. 8-1567, and failure to maintain a single lane, K.S.A. 8-1522. He was found guilty of both counts by the district magistrate judge. He appealed to the district court, demanding a jury trial.

Before the trial in district court, the State charged Muck with operating a vehicle while the alcohol concentration in his blood or breath was .08 or more (K.S.A. 1996 Supp. 8-1567[a][2]) and, alternatively, operating a vehicle under the influence of alcohol to a degree that rendered him incapable of safely driving (K.S.A. 1994 Supp. 8-1567[a][3]). He was also charged with improperly driving a vehicle on a laned roadway (K.S.A. 8-1522).

The State endorsed Weed and Lieutenant Darrell Fiske (the records custodian) as witnesses. The voir dire referenced Weed and Fiske. After the jury was selected but before opening statements, the State advised the court that Fiske was unavailable and that Officer Furbeck would be testifying in his place. Muck's coun-

sel objected because he had no opportunity to voir dire the jury on Furbeck and he had prepared to cross-examine Fiske. The judge considered the State's request as an untimely motion to endorse an additional witness and denied it, observing that Fiske had been subpoenaed on January 10, 1996. (The trial commenced on March 7, 1996.) The State acknowledged that this ruling would prevent it from presenting any evidence on the breath test but indicated it would proceed on the alternate driving under the influence charge. The district court granted Muck's motion for an order in limine prohibiting the State from mentioning the breath test. The State requested a short recess to admonish its witness to comply.

Early in the direct examination of Weed, the prosecutor asked about a report Weed had filled out at the time of Muck's arrest, and Weed answered:

"Q. All right. Are there any other errors in your report that you're aware of?
"A. I'm sure there's probably some. There's one on the chemical test information, the type of test offered.
"[Muck's counsel]: Hold on."

At the sidebar, counsel moved for dismissal or alternatively, a mistrial, in view of Weed's answer. The judge expressed concern that Weed's mention of the test had occurred so soon after the order in limine and stated he would take the motion under advisement. Counsel completed his questioning of Weed. The breath test was not mentioned again.

Following cross- and redirect examination, Weed was excused, subject to recall. The prosecutor approached the bench and advised the court that he just learned that Fiske had arrived. Over Muck's objection, the court allowed the State to proceed. Weed testified that after the arrest, Muck agreed to a breath test, which Weed administered. Weed was asked about his certification to use the Intoxilyzer 5000 test equipment. He answered that he was certified through the State. Muck objected for lack of foundation, and another sidebar exchange followed:

"[Defense counsel]: That part of the answer was unresponsive to the questions. But, beyond that, Your Honor, the case law is clear that unless he has his card with him that his oral testimony is not admissible.

"THE COURT: I presume that you're going—

"[Prosecutor]: That's what I was going to do, Your Honor.

"[Defense counsel]: I think if he does that I don't have an objection.

"THE COURT: For the record, I'm going to overrule the prior Motion for Mistrial at this point. Does appear that the Motion in Limine will be filled by the presence of Officer Fiske to testify as endorsed."

The State marked as an exhibit a photocopy of Weed's certification card issued by the Department of Health and Environment for the Intoxilyzer 5000, with an effective date of January 1, 1996. Muck objected, based on the effective date of the card. The district court sustained the objection. The State then asked Weed if he had ever lost his certification, and Weed testified that he had not. Weed earlier testified that he has been employed by the Highway Patrol since 1987. Muck's counsel requested a sidebar conference and reiterated his objection, arguing that unless the certification card showed it was effective at the time of the March 1995 test, Weed's testimony as to his certification was inadmissible under *State v. Rohr*, 19 Kan. App. 2d 869. Muck renewed the motion in limine and motion for mistrial, arguing that the State had misled the court and counsel by representing that Weed had his card. The judge inquired if Weed had a certification card effective on the test date. The State said that he did not, having learned of the missing card the previous evening. The prosecutor said that he was proceeding based on his prior experience when an officer had not kept his previous year's card after being issued a new card. The prosecutor would ask the officer if he was currently certified and if he had ever lost that certification. The district court, relying on *Rohr*, 19 Kan. App. 2d 869, ruled that Weed's current (1996) Intoxilyzer 5000 certification card was an insufficient foundation for the admission of the results of Muck's breath alcohol test given in 1995.

The judge did not feel the prosecutor's explanation of the missing 1995 card was adequate. Having determined that Muck had been prejudiced by the testimony concerning the breath test, the judge declared a mistrial at the responsibility of the State and discharged Muck. The judge found Muck not guilty on the failure to maintain a single lane change. (This misdemeanor traffic charge

was tried to the court.) The journal entry provides: "The Court declares a mistrial and dismissed Count One (1) [the DUI charge] with prejudice." The judge made no statement on the record that he was dismissing Count I. He said: "And I'm going to declare a mistrial at the responsibility of the State and discharge the defendant with prejudice."

## DISCUSSION

### Appellate Jurisdiction

Initially, Muck argues that the State failed to question the validity of *Rohr* at the trial level and, thus, should be precluded from advancing a challenge on appeal. However, the position the State took at trial did call into question the validity of *Rohr*.

Muck also argues that the State never proffered the excluded evidence (the breath test results) to the district court; consequently, we cannot review whether this evidence was properly excluded. Muck acknowledges that the State did file a proffer of the breath test results before trial to the magistrate judge. The district judge and counsel knew what the State's excluded breath test results would show here. Muck's argument is not persuasive.

Muck also contends that the State should have appealed under K.S.A. 22-3602(b)(3) (question reserved), rather than K.S.A. 22-3602(b)(1) (dismissal of complaint), to question the validity of *Rohr*. We acknowledge that the State could have appealed under K.S.A. 22-3602(b)(3), but presumably chose K.S.A. 22-3602(b)(1) to pursue prosecution of Muck if the appeal is successful. The alternative selected by the State is appropriate.

In *State v. Johnson*, 261 Kan. 496, 932 P.2d 380 (1997), we recently reviewed under K.S.A. 22-3602(b)(1) the State's appeal of the dismissal of DUI and reckless driving charges based on double jeopardy. *Johnson* is precedent for jurisdiction under K.S.A. 22-3602(b)(1) to review a complaint dismissal based on double jeopardy. In *Johnson*, the assigned magistrate judge (whose home district was 5 hours away) declared a mistrial because he considered the forum inconvenient after the trial could not be completed in 1 day. Johnson moved for dismissal, based on double jeopardy. The district court agreed and we affirmed.

## The *Rohr* Case

The State calls into question the foundational requirements for admission of breath test results announced in *Rohr*, 19 Kan. App. 2d 869. An issue of law is subject to unlimited review. See *State v. Donlay*, 253 Kan. 132, 134, 853 P.2d 680 (1993). We address the State's challenge to *Rohr*.

Rohr appealed his DUI conviction, arguing that the district court erred in admitting his breath test results without proper certification. The Court of Appeals reversed and remanded for a new trial. At trial, the officer who administered the breath test testified that the test instrument and operator were properly certified on the date of the test. Rohr objected on lack of foundation and hearsay grounds; the written certification from the Kansas Department of Health and Environment of the operator and instrument were not introduced. The *Rohr* court observed that admission of the actual documents of certification appeared to be the "standard," stating: "Without question, the better practice is for the State to produce the original documents of certification for admission into evidence." 19 Kan. App. 2d at 871. However, the court noted a greater problem was whether the officer's testimony regarding certification "violated the prohibition against hearsay [K.S.A. 60-460] and/or the best evidence rule as codified in K.S.A. . . . 60-467(a)." 19 Kan. App. 2d at 871. *Rohr* concluded that the testimony was inadmissible hearsay and also violated the best evidence rule. We agree.

Although dealing with the question of whether a breath testing device had to be reinspected following repairs to maintain certification, we recently cited *Rohr* with approval in *State v. Strand*, 261 Kan. 895, 898, 933 P.2d 713 (1997).

The State requests us to disapprove *Rohr*, arguing that Weed's testimony about his certification is not hearsay. The certification card is a statement by the Kansas Department of Health and Environment certifying that Weed has complied with the applicable rules and regulations "for testing human breath for alcohol for law enforcement purposes with the Intoxilyzer 5000," with an effective date of January 1, 1996, and an expiration date of December 31, 1996.

The State relies on *State v. Lieurance*, 14 Kan. App. 2d 87, 782 P.2d 1246 (1989), *rev. denied* 246 Kan. 769 (1990), in arguing that an officer's testimony regarding testing procedures and certification should be as sufficient for foundational purposes as the actual certification documents. Nothing in *Lieurance* supports the State's argument that an officer's testimony about his certification could be used as a substitute for the statutorily required certification document.

The State claims that if *Rohr* were extended to other licensed professionals, doctors and lawyers would have to bring all their diplomas into court. The State's observation is off the mark. The argument ignores the entry of the legislature into this evidentiary arena. The specific certification requirements set forth at 8-1002(a)(3) are properly acknowledged in *Rohr*, 19 Kan. App. 2d at 870.

The State counters the best evidence rule by contending that the district court could have found Weed's certification card had been lost or destroyed, under K.S.A. 60-467(a)(2)(A). However, the State never requested such a finding. Had it done so, the situation giving rise to the mistrial could have been prevented. The district judge's ruling was based in part on his view that the State had other proper ways to establish Weed's certification, but chose not to pursue them. The State contends that *Rohr* misapplied the best evidence rule. The State asserts that Weed's testimony that he is certified is the same thing as the certification itself. Its assertion is faulty.

According to the State, requiring the 1995 certification card is "an ill-conceived technical requirement that would have had no impact on the defense's ability to fully question the officer about the ultimate issues in this case." If so, the argument should be addressed to the legislature.

The district court did not err in ruling that Weed's testimony about his certification was an insufficient foundation for admission of the breath test result.

### The Mistrial and Dismissal With Prejudice

An abuse of discretion standard of review applies to a district court's decision to declare a mistrial. *State v. Aikins*, 261 Kan. 346, Syl. ¶ 23, 932 P.2d 408 (1997).

The State contends that the mistrial declaration was improper because the court had other alternatives, short of dismissal of the charge, citing *State v. Wilkins*, 220 Kan. 735, 556 P.2d 424 (1976). In *Wilkins*, we affirmed a district court ruling conditionally striking the testimony of two prosecution witnesses if the State did not produce copies of the witnesses' written statements, which the State claimed were lost. *Wilkins* adds no insight to the resolution of this case.

The State argues that it would have taken little time to have produced a replacement copy of the 1995 certification card, "had the State been aware of the need to do so." This reasoning weighs against the State. Under *Rohr*, the State should have known the necessity for the 1995 card. Having known about the missing certification card the evening before trial, the State should have obtained a replacement certification, or if that was not possible, brought the problem to the court's attention before voir dire. The district court could have granted the State a short recess to attempt to obtain the needed certification, as the State suggests. However, the State never requested a recess.

K.S.A. 22-3423 governs mistrials. The district judge appears to have based his mistrial ruling on K.S.A. 22-3423(1)(c), although he did not reference it. Under K.S.A. 22-3423(2), after a mistrial is ordered, the case is to be retained on the docket for trial or other proceedings as may be proper. However, jeopardy had already attached here because the jury had been sworn, and the mistrial occurred during the testimony of the State's first witness. K.S.A. 21-3108(1)(c) bars further prosecution after jeopardy attaches if the former prosecution was terminated without defendant's consent (subject to certain exceptions not applicable here). "[I]f the prosecutor's misconduct was intentional and substantially prejudiced the defendant's right to a fair trial, double jeopardy would prohibit a new trial." *State v. McClanahan*, 259 Kan. 86, 101, 910 P.2d 193 (1996).

When a defendant's counsel moves for a mistrial, it is generally presumed that the defendant consented to the mistrial, and double jeopardy would not preclude another trial. *State v. Smith*, 16 Kan.

App. 2d 478, 480, 825 P.2d 541 (1992). See *United States v. Jorn*, 400 U.S. 470, 485, 27 L. Ed. 2d 543, 91 S. Ct. 547 (1971).

However, within the narrow circumstances described in *Oregon v. Kennedy*, 456 U.S. 667, 72 L. Ed. 2d 416, 102 S. Ct. 2083 (1982), prosecutorial misconduct can preclude further prosecution, even though the defendant requested the mistrial.

In *McClanahan*, 259 Kan. 86, in affirming the district court's denial of McClanahan's motion for mistrial based on prosecutorial misconduct, we mentioned K.S.A. 21-3108(1)(c) and the *Kennedy* test, but determined that the prosecutorial misconduct was harmless error. Citing *State v. Cady*, 254 Kan. 393, Syl. ¶ 4, 867 P.2d 270 (1994), we articulated the *Kennedy* test as follows:

"[A] defendant should be allowed to freely choose whether to request a mistrial and forego the right to have the matter decided by the first trier of fact. Where the prosecutor seeks to force the defendant into a choice, the choice is not freely made and the prosecutor has subverted the defendant's rights protected by the Double Jeopardy Clause of the Constitution. Here, if the defendant was forced into requesting a mistrial by the prosecutor's intentional misconduct, retrial would be barred by K.S.A. 21-3108(1)(c) and by the Double Jeopardy Clause of the Kansas and United States Constitutions." *McClanahan*, 259 Kan. at 102.

*Kennedy* requires intent by the prosecutor to provoke the defendant into moving for a mistrial. A prosecutor's misconduct could be intentional (probably to obtain a conviction), but not intended to provoke a defendant's motion for mistrial.

Although the district judge did not mention double jeopardy in his ruling or refer to K.S.A. 21-3108(1)(c), he did find that Muck had been prejudiced and the State's conduct was intentional. We must examine the record to see if it supports a mistrial declaration based on intentional prosecutorial misconduct under the *Kennedy* test.

Muck first moved for a mistrial after Weed mentioned "chemical testing." Weed's reference appears to have been unintentional, although it occurred during direct examination only minutes after the order in limine precluding mention of the breath test was entered. The order in limine was entered when the prosecutor revealed that his endorsed witness, Fiske, the records custodian for the Intoxilyzer 5000 instrument, was unavailable, preventing the

State from presenting the necessary foundation for admission of the breath test results. When the prosecutor later informed the court that Fiske was available, the order in limine was lifted. Although the prosecutor knew on the evening before the trial that Weed did not have his 1995 certification card, he did not share his knowledge with the court. He represented to the court that, with Fiske's availability, he now had the needed foundation evidence for the breath test. Had the judge known ahead of time of the State's foundation problems with Weed's certification, he undoubtedly would not have lifted the order in limine. Muck renewed the motion for mistrial after the State's foundation problems surfaced during the prosecutor's questioning of Weed on his certification. Weed had already testified about administering the breath test to Muck. Muck arguably was forced to move for mistrial at that point.

The State contends that the district court's dismissal of the DUI count was an abuse of discretion, pointing out that the prosecutor's conduct may have reflected a misunderstanding of the law, but not a blatant disregard of it, or intention to mislead the court or provoke a motion for mistrial. (The judge acknowledged the prosecutor's inexperience.)

Muck contends that the State's misconduct was intentionally misleading, in bad faith, and intended to produce a mistrial. Muck also argues that the district court did not grant his motion for mistrial, but instead declared a mistrial at the responsibility of the State. However, Muck never withdrew his motion for mistrial.

Muck cites State v. Clovis, 248 Kan. 313, 330, 807 P.2d 127 (1991) (district court's dismissal of two criminal counts as a K.S.A. 22-3212[g] discovery sanction against State for failure to disclose confidential informant affirmed); State v. Schilling, 238 Kan. 593, 601, 712 P.2d 1233 (1986) (K.S.A. 22-3212[g] discovery sanction order held to be in error) and State v. Winter, 238 Kan. 530, 712 P.2d 1228 (1986) (discovery sanction order of dismissal reversed) as cases involving prosecutorial misconduct resulting in dismissal. These discovery sanction cases are not controlling. This is not a discovery sanction case.

Muck also relies on two double jeopardy cases, United States v. Broderick, 425 F. Supp. 93 (S.D. Fla. 1977), and United States v.

*Kessler*, 530 F.2d 1246 (5th Cir. 1976), in which the court barred retrial after finding "prosecutorial overreaching" to be "gross negligence or intentional misconduct." *Kessler* and *Broderick* are pre-*Kennedy* cases. The Court in *Kennedy* pared down the type of prosecutorial overreaching that would preclude retrial when the defendant has moved for a mistrial based on intentional misconduct. The prosecutor "bad faith conduct" standard announced in *Divans v. California*, 434 U.S. 1303, 54 L. Ed. 2d 14, 98 S. Ct. 1 (1977), cited by Muck, also must be considered as modified by *Kennedy*.

In *State v. Clover*, 924 S.W.2d 853, 857 (Mo. 1996), the Missouri Supreme Court held the trial court's granting of defendant's mistrial motion was not an abuse of discretion, but found error in the declaration of a mistrial with prejudice, absent a finding that the prosecutor intended to provoke the mistrial request. The trial court found that the prosecutor's actions had only the effect of provoking such request. We agree with the *Clover* rationale.

When Muck's counsel accused the State of sabotaging the trial, the prosecutor responded: "Judge, I did not sabotage the trial, I was not intending to mislead anybody."

The district judge found the State's conduct misleading, stating:

"Well, it is misleading to Court and counsel, because you suggested to us when you recalled the witness that you had—that the only problem in foundation was the fact that Mr. Fiske was or was not going to be available. We've got other problems here with regard to foundation which you knew or should have known about."

Although the district judge's statement on the record at the time of his ruling did not include a finding that the prosecutor's conduct was intentional, the journal entry provided:

"After hearing the evidence presented, the Court ruled that the jury was prejudiced by the admission of inadmissable testimony, which the State intentionally put into evidence, and is not correctable by instruction."

We acknowledge that the State intentionally put on testimony about the breath test while aware of its foundation problems; however, the district court did not make a finding that the State did so to intentionally provoke a mistrial.

*Kennedy* teaches:

"Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, therefore, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. . . . Only where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." 456 U.S. at 675-76.

We hold that the district court's findings are inadequate to permit judicial review of the double jeopardy issue under the *Kennedy* standard.

We remand for the purpose of having the district court make a supplemental finding of fact on the issue of whether or not the actions of the prosecutor prompting the mistrial motion were done with the intention of goading Muck into requesting a mistrial. For a similar remand disposition see *State v. Rademacher*, 433 N.W.2d 754, 757 (Iowa 1988).

The district judge's declaration of mistrial is supported by the record. We affirm the mistrial declaration. The case is remanded for the specific purpose stated herein. After making the directed finding, the district court shall enter the appropriate judgment.