NOT DESIGNATED FOR PUBLICATION

Nos. 120,010
120,011

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DAYTON C. DOYLE PEEPLES,
*Appellant*.


MEMORANDUM OPINION

Appeal from Greenwood District Court; JANETTE L. SATTERFIELD, judge. Opinion filed January 10, 2020. Affirmed in part, vacated in part, and remanded with directions.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., LEBEN and SCHROEDER, JJ.


SCHROEDER, J.:  In this consolidated appeal, Dayton C. Doyle Peeples challenges the sentences imposed based on his guilty pleas in conjunction with his plea agreement. Peeples raises three points of error:  (1) the district court erred in imposing fines for his forgery convictions; (2) the district court erred in imposing a KBI lab fee related to charges dismissed under the plea agreement; and (3) the district court erred in using his criminal history to determine his sentence. Upon review of the record, we find the district court was required to impose a fine under K.S.A. 2018 Supp. 21-5823(b)(3)-(4) based on his forgery convictions. We also find the journal entry improperly reflected a KBI lab fee.

1

We vacate the order and remand for a nunc pro tunc journal entry to be prepared reflecting no KBI lab fee. As to Peeples' final argument, we find it is controlled by *State v. Ivory*, 273 Kan. 44, 46, 41 P.3d 781 (2002), and we affirm the district court's use of Peeples' criminal history to determine his sentence. Affirmed in part, vacated in part, and remanded with instructions.

FACTS

Peeples was charged with 17 counts in 2 Greenwood County cases, 17CR107 and 17CR114. We ordered the two cases be consolidated on appeal. Peeples agreed to plead guilty to two counts of forgery and two counts of identity theft in 17CR107 and two counts of burglary of a vehicle in 17CR114. In exchange, the State agreed to dismiss all of the remaining charges in both cases. After the district court explained to Peeples his basic rights to a jury trial and the rights he would be giving up by entering his pleas, it accepted Peeples' guilty pleas in both cases. The district court found Peeples understood his rights, his pleas were voluntarily entered into, and there was a sufficient factual basis to convict him of all six offenses to which he pled.

At sentencing, the district court determined Peeples' criminal history was category A based on his prior convictions. See K.S.A. 2018 Supp. 21-6809 (defining criminal history categories based on number and nature of prior convictions). Based on Peeples' criminal history, in 17CR107, the district court sentenced him to 21 months' imprisonment for the first forgery count, concurrent with 8 months' imprisonment for the second forgery count. It also imposed fines of $12.32 and $67.40 for counts one and two, respectively. It further imposed eight months' imprisonment for each of his identity theft convictions to run concurrent with his sentences for forgery. In 17CR114, the district court sentenced Peeples to 16 months' imprisonment for the first count of burglary of an automobile, and a concurrent sentence of 6 months' imprisonment for the second count. The district court ran Peeples' sentences in 17CR114 concurrent to his sentences in

2

17CR107, but consecutive to his sentences in two other cases he had pending in Butler County. Although the district court did not assess a lab fee at sentencing, a $400 KBI lab fee was imposed in the journal entry of sentencing in 17CR107.

ANALYSIS

Peeples' first two arguments raise questions of statutory interpretation. Interpretation of a statute is a question of law over which appellate courts have unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015). His last issue is controlled by *Ivory,* 273 Kan. at 46, and requires limited analysis.

The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State v. Jordan*, 303 Kan. 1017, 1019, 370 P.3d 417 (2016). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. Where there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the Legislature's intent. *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016).

When construing statutes to determine legislative intent, appellate courts must consider various provisions of an act *in pari materia* with a view of reconciling and bringing the provisions into workable harmony if possible. *State v. Keel*, 302 Kan. 560, Syl. ¶ 7, 357 P.3d 251 (2015). Courts must construe statutes to avoid unreasonable or absurd results and presume the Legislature does not intend to enact meaningless legislation. *State v. Frierson*, 298 Kan. 1005, 1013, 319 P.3d 515 (2014). As a general

rule, criminal statutes are strictly construed in favor of the accused. That rule is constrained, however, by the rule that interpretation of a statute must be reasonable and sensible to give effect to legislative design and intent of the law. See *Barlow*, 303 Kan. at 813. The rule of lenity arises only when there is any reasonable doubt as to the statute's meaning. *State v. Williams*, 303 Kan. 750, 760, 368 P.3d 1065 (2016).

*The district court properly imposed fines for Peeples' forgery convictions.*

Peeples argues the district court erred when it imposed fines for his forgery convictions. He asserts because he was subject to presumptive imprisonment based on his criminal history score, the district court could not impose the mandatory sentence set forth in K.S.A. 2018 Supp. 21-5823(b)(3), which includes a fine in "the lesser of the amount of the forged instrument or $1,000." In support of his argument, he relies on K.S.A. 2018 Supp. 21-6804(i)(2), providing, in pertinent part: "If because of the offender's criminal history classification the offender is subject to presumptive imprisonment . . . the provisions of this section and K.S.A. 2018 Supp. 21-6807, and amendments thereto, shall apply and the offender shall not be subject to the mandatory sentence as provided in K.S.A. 2018 Supp. 21-5823." Specifically, Peeples asserts:

> "[T]he mandatory fines of K.S.A. 21-5823(b)(3) did not apply to this presumptive prison case. The language of K.S.A. 21-6804(i)(2) is plain and unambiguous. It states that individuals subject to mandatory prison sentences, like [Peeples], are *not* subject to the mandatory jail sanctions and fines that presumptive probation offenders are subject to."

The State responds: "K.S.A. 21-6804(i)(2) does not appear to be dealing with the fines set forth in K.S.A. 21-5823. Rather, when the two statutes are read together, K.S.A. 21-6804(i)(2) merely permits a court to impose prison time instead of probation, but has no effect on the fines to be imposed." The State is correct, K.S.A. 2018 Supp. 21-6804(i)(2) has no effect on the fines required by K.S.A. 2018 Supp. 21-5823.

Peeples' argument ultimately fails because he is effectively asking this court to read K.S.A. 2018 Supp. 21-6804(i)(2) in isolation, which it cannot do. Instead, this court must construe the provisions of K.S.A. 2018 Supp. 21-5823 together with K.S.A. 2018 Supp. 21-6804(i)(1)-(3), while also considering their interplay within the overall legislative scheme of the revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2018 Supp. 21-6801 et seq. See *Keel*, 302 Kan. 560, Syl. ¶ 7.

Under the KSGA, "the sentencing guidelines . . . shall be applicable to felony crimes committed on or after July 1, 1993," except as otherwise provided. K.S.A. 2018 Supp. 21-6802(c); see *State v. Strand*, 261 Kan. 895, 899, 933 P.2d 713 (1997) (where a statute contains specific penalty provisions for an offense, the specific provisions within the statute, not the KSGA, apply). K.S.A. 2018 Supp. 21-5823(b)(2)-(4) contain specific penalty provisions for forgery convictions as follows:

> "(2) On a first conviction of forgery, in addition to any other sentence imposed, a person shall be fined the lesser of the amount of the forged instrument or $500.
> "(3) On a second conviction of forgery, a person shall be required to serve at least 30 days' imprisonment as a condition of probation, and fined the lesser of the amount of the forged instrument or $1,000.
> "(4) On a third or subsequent conviction of forgery, a person shall be required to serve at least 45 days' imprisonment as a condition of probation, and fined the lesser of the amount of the forged instrument or $2,500."

K.S.A. 2018 Supp. 21-5823(b)(5) provides: "The person convicted shall not be eligible for release on probation, suspension or reduction of sentence or parole until the person has served the mandatory sentence as provided herein." Although subsection (b)(5) refers to "the mandatory sentence as provided herein," K.S.A. 2018 Supp. 21-5823 does not explicitly define "the mandatory sentence" for forgery convictions. Further, K.S.A. 2018 Supp. 21-5823(b)(2)-(4) provide no explicit presumptive dispositional or durational sentences. In *State v. Raschke*, 289 Kan. 911, 921-22, 219 P.3d 481 (2009),

5

our Supreme Court held the Legislature's use of the words "shall . . . be fined" in K.S.A. 21-3710—the prior codification of K.S.A. 2018 Supp. 21-5823—made fines a mandatory component of forgery sentences. Both parties cite *Raschke* in their briefs but fail to apply it to the specific issues before us.

K.S.A. 2018 Supp. 21-5823(b)(2)-(4) require the imposition of fines for all forgery convictions. When read with *Raschke*, the statutorily mandated fines under K.S.A. 2018 Supp. 21-5823(b)(2)-(4) become a component of the mandatory sentence for forgery. However, the plain language of K.S.A. 2018 Supp. 21-5823(b)(5)—"until the person has *served* the mandatory sentence" (emphasis added)—suggests the fine is not part of the specific statutory definition of "mandatory sentence" in K.S.A. 2018 Supp. 21-5823. This is because a person cannot *serve* a fine; a person *pays* a fine. And this court must interpret the statute based on its plain language. See *Barlow*, 303 Kan. at 813.

We now turn to look at the plain language of the statute and acknowledge a specific statute controls over a general statute. Likewise, a specific provision within a statute controls over a more general provision within the statute. See *Vontress v. State*, 299 Kan. 607, 613, 325 P.3d 1114 (2014). K.S.A. 2018 Supp. 21-5823(b)(5) is the specific provision within the statute; its plain meaning controls if it can be readily ascertained. See *Barlow*, 303 Kan. at 813; *Vontress*, 299 Kan. at 613. Subsection (b)(5)'s reference to "release on probation . . . or parole" *after* "the person has served the mandatory sentence as provided herein" further suggests the definition of "mandatory sentence" in K.S.A. 2018 Supp. 21-5823 refers only to mandatory jail time as a condition of probation under subsections (b)(3) and (b)(4). This is because a person on probation or parole is still serving a criminal sentence. See *State v. Kinder*, 307 Kan. 237, 242-43, 408 P.3d 114 (2018) (probation and parole are alternative dispositions in which an offender is released into the community as opposed to serving his or her underlying sentence in prison). Thus, "the mandatory sentence as provided [in K.S.A. 2018 Supp. 21-5823]" is narrower than the *entire* sentence for forgery. See K.S.A. 2018 Supp. 21-5823(b)(5). We

6

refer to the mandatory period of "imprisonment" to be served under K.S.A. 2018 Supp. 21-5823(b)(3) and (4) as "jail time" because K.S.A. 2018 Supp. 21-6804(i)(3) states: "the term of imprisonment . . . shall not be served in a state facility in the custody of the secretary of corrections."

This interpretation is supported by *State v. Arnett*, 290 Kan. 41, 48-49, 223 P.3d 780 (2010). The *Arnett* court held the language in K.S.A. 21-3710(b)(4)—now K.S.A. 2018 Supp. 21-5823(b)(4)—stating the defendant "shall be required to serve at least 45 days' imprisonment as a condition of probation" created a mandatory minimum sentence. *Arnett* reasoned the statutory language limited the district court's discretion to impose jail time as a condition of probation. See 290 Kan. at 48-49. Under K.S.A. 2018 Supp. 21-6607(b)(14), the district court generally may impose as a condition of probation in felony cases "[confinement] in a county jail not to exceed 60 days." K.S.A. 2018 Supp. 21-5823(b)(5) merely limits the district court's authority to impose a *lesser* period of jail time as a condition of probation for a second or subsequent forgery conviction. See *Arnett*, 290 Kan. at 48-49; compare K.S.A. 2018 Supp. 21-5823(b)(3) and (4) with K.S.A. 2018 Supp. 21-6607(b)(14). This is further evident in reading K.S.A. 2018 Supp. 21-6804(i)(1)-(3) as a whole, which provide:

"(1) The sentence for the violation of the felony provision of K.S.A. 8-2,144 and 8-1567 and K.S.A. 2018 Supp. 21-5414(b)(3), 21-5823(b)(3) and (b)(4), 21-6412 and 21-6416, and amendments thereto, shall be as provided by the specific mandatory sentencing requirements of that section and shall not be subject to the provisions of this section or K.S.A. 2018 Supp. 21-6807, and amendments thereto.

"(2) If because of the offender's criminal history classification the offender is subject to presumptive imprisonment or if the judge departs from a presumptive probation sentence and the offender is subject to imprisonment, the provisions of this section and K.S.A. 2018 Supp. 21-6807, and amendments thereto, shall apply and the offender shall not be subject to the mandatory sentence as provided in K.S.A. 2018 Supp. 21-5823, and amendments thereto.

"(3) Notwithstanding the provisions of any other section, the term of imprisonment imposed for the violation of the felony provision of K.S.A. 8-2,144, and 8-1567 and K.S.A. 2018 Supp. 21-5414(b)(3), 21-5823(b)(3) and (b)(4), 21-6412 and 21-6416, and amendments thereto, shall not be served in a state facility in the custody of the secretary of corrections, except that the term of imprisonment for felony violations of K.S.A. 8-2,144 or 8-1567, and amendments thereto, may be served in a state correctional facility designated by the secretary of corrections if the secretary determines that substance abuse treatment resources and facility capacity is available. The secretary's determination regarding the availability of treatment resources and facility capacity shall not be subject to review. Prior to imposing any sentence pursuant to this subsection, the court may consider assigning the defendant to a house arrest program pursuant to K.S.A. 2018 Supp. 21-6609, and amendments thereto."

K.S.A. 2018 Supp. 21-6804(i)(1) specifically references K.S.A. 2018 Supp. 21-5823(b)(3) and (4); it does not reference K.S.A. 2018 Supp. 21-5823(b)(2). While K.S.A. 2018 Supp. 21-5823(b)(2)-(4) all require the imposition of fines; K.S.A. 2018 Supp. 21-5823(b)(2) does not require the imposition of jail time. This is important in interpreting the overall legislative intent of K.S.A. 2018 Supp. 21-6804(i)(1)-(3) because the inclusion of one thing implies the exclusion of another. Including only K.S.A. 2018 Supp. 21-5823(b)(3) and (4), which require mandatory jail time, implies the mandatory fines for *all* forgery convictions is irrelevant to the legislative intent of K.S.A. 2018 Supp. 21-6804(i)(1)-(3). See *State v. Martin*, 285 Kan. 735, 741-42, 175 P.3d 832 (2008).

K.S.A. 2018 Supp. 21-6804(i)(1) is particularly instructive because it also refers to the "[t]he sentence[s] for the violation of the *felony provision* of K.S.A. 8-2,144 and 8-1567 and K.S.A. 2018 Supp. 21-5414(b)(3), . . . 21-6412 and 21-6416." (Emphasis added.) Many of those offenses may be elevated from a misdemeanor to a felony based on prior convictions for the same crime. See K.S.A. 2018 Supp. 8-2,144(b)(1)(C) (third or subsequent conviction for driving under the influence [DUI] in a commercial vehicle is a nonperson felony); K.S.A. 2018 Supp. 8-1567(b)(1)(D) (third conviction for DUI is "a nonperson felony if the person has a prior conviction which occurred within the

8

preceding 10 years"); K.S.A. 2018 Supp. 8-1567(b)(1)(E) (fourth or subsequent DUI conviction is a nonperson felony); K.S.A. 2018 Supp. 21-5414(c)(1)(C) (domestic battery is "a person felony, if, within five years immediately preceding commission of the crime, an offender is convicted of domestic battery a third or subsequent time"); K.S.A. 2018 Supp. 21-6412(b)(2)(B) (cruelty to animals is a "nonperson felony upon the second or subsequent conviction of cruelty to animals as defined in subsection [a][2], [a][3], [a][4] or [a][5]").

Those statutes classify the offense as a person or nonperson felony but do not specify a KSGA severity level. The other offenses encompassed by K.S.A. 2018 Supp. 21-6804(i)(1) also do not have a KSGA severity level classification. See K.S.A. 2018 Supp. 21-6412(b)(1) (first offense for cruelty to animals under "[s]ubsection [a][1] or [a][6] [of K.S.A. 2018 Supp. 21-6412] is a nonperson felony"); K.S.A. 2018 Supp. 21-6416(b) ("[i]nflicting harm, disability or death to a police dog, arson dog, assistance dog, game warden dog or search and rescue dog is a nonperson felony"). But, all forgery convictions are designated as a severity level 8 nonperson felony offense under K.S.A. 2018 Supp. 21-5823(b)(1). Prior forgery convictions are only relevant in determining the maximum fine allowed and if and how much jail time the court must impose before probation can be granted. See K.S.A. 2018 Supp. 21-5823(b)(2)-(4).

Unlike the penalty provisions for forgery, the other crimes listed in K.S.A. 2018 Supp. 21-6804(i)(1) have self-contained sentencing provisions; they specify a minimum and maximum term of imprisonment. But like the penalties for forgery, they all require the imposition of a fine. Compare K.S.A. 2018 Supp. 21-5823(b)(2)-(4) with K.S.A. 2018 Supp. 8-2,144(b)(1)(C), K.S.A. 2018 Supp. 8-1567(b)(1)(D) and (E), K.S.A. 2018 Supp. 21-5414(c)(1)(C), K.S.A. 2018 Supp. 21-6412(b)(1) and (b)(2)(B), and K.S.A. 2018 Supp. 21-6416(b). Thus, *every* offense listed in K.S.A. 2018 Supp. 21-6804(i)(1) requires the imposition of a fine. Accordingly, the only relevant distinction between K.S.A. 2018

9

Supp. 21-5823(b)(2) and *all* offenses specified in K.S.A. 2018 Supp. 21-6804(i)(1)—including K.S.A. 2018 Supp. 21-5823(b)(3) and (4)—is the lack of mandatory jail time.

Further, the Legislature referred to "the *felony provision*" of all offenses listed in K.S.A. 2018 Supp. 21-6804(i)(1). (Emphasis added.) There is no distinct "felony provision" under K.S.A. 2018 Supp. 21-5823(b)(3) and (4); they are felony offenses irrespective of any prior forgery convictions. See K.S.A. 2018 Supp. 21-5823(b)(1). All other offenses listed under K.S.A. 2018 Supp. 21-6804(i)(1) are only referred to by the general statute, not the specific subsections constituting the "felony provision[s]" thereof. This further demonstrates the Legislature's intent to distinguish between mandatory jail time under K.S.A. 2018 Supp. 21-5823(b)(3) and (4) and mandatory fines for all forgery convictions. A first forgery conviction falls under the "felony provision" of K.S.A. 2018 Supp. 21-5823(b)(2) because *all* forgery convictions are felony offenses. See K.S.A. 2018 Supp. 21-5823(b)(1). We find the Legislature's *specific* reference to the "felony provision[s] of K.S.A. . . . 21-5823(b)(3) and (b)(4)" in K.S.A. 2018 Supp. 21-6804(i)(1) shows an intent to exclude the felony provision of K.S.A. 2018 Supp. 21-5823(b)(2). See *Martin*, 285 Kan. at 741-42.

Based on this analysis of K.S.A. 2018 Supp. 21-6804(i)(1), we find K.S.A. 2018 Supp. 21-6804(i)(2) only precludes the district court from imposing probation when the offender's criminal history score would result in a presumptive prison sentence. Unlike the other offenses specified in K.S.A. 2018 Supp. 21-6804(i)(1), forgery has a KSGA severity classification—"level 8, nonperson felony." K.S.A. 2018 Supp. 21-5823(b)(1). The presumptive KSGA sentence for a nondrug severity level 8 felony is imprisonment *if* the defendant's criminal history category is A or B. See K.S.A. 2018 Supp. 21-6804(a) and (c). The sentences prescribed under K.S.A. 2018 Supp. 21-5823(b)(3) and (4) differ from the KSGA guidelines insofar as they: (1) require a minimum term of imprisonment as a condition of probation; and (2) require the imposition of a fine. While K.S.A. 2018 Supp. 21-5823(b)(3) and (4) require a mandatory jail time as *a condition of* probation,

10

they do not specify a specific probationary sentence be imposed; that is left to the KSGA nondrug felony sentencing grid based on the defendant's criminal history score.

The district court found Peeples had a criminal history score of A based on his prior convictions. Accordingly, Peeples' presumptive sentence was imprisonment, which the district court properly imposed for his current forgery convictions. See K.S.A. 2018 Supp. 21-6804(a) and (i)(2); K.S.A. 2018 Supp. 21-6815(a). Because Peeples' criminal history included one prior forgery conviction, the district court was also required to impose a fine in "the lesser of the amount of the forged instrument or $1,000." K.S.A 2018 Supp. 21-5823(b)(3); *Raschke*, 289 Kan. at 921-22. Here, the district court imposed a total fine of $79.72—the actual amount of the two forged instruments upon which Peeples' forgery convictions were based. As previously discussed herein, K.S.A. 2018 Supp. 21-6804(i)(2) has no effect on the mandatory fines for forgery convictions. The district court properly imposed the fines in addition to Peeples' prison sentence.

Peeples alternatively argues the district court could have otherwise imposed the fines within its discretion under K.S.A. 2018 Supp. 21-6611(a)(3). However, it did not make the necessary findings regarding his ability to pay and the burden it would impose as required by K.S.A. 2018 Supp. 21-6612(c) and (d). But this argument is contrary to our Supreme Court's decision in *Raschke*, 289 Kan. at 924-25. Therefore, Peeples fails to show the district court erred in imposing the fines.

*The district court erred in imposing the KBI lab fee.*

The journal entry of sentencing reflects the district court imposed a $400 KBI lab fee in 17CR107. At sentencing, the district court did not order the payment of the fee; thus, there is no indication as to the specific offense for which it was imposed.

Peeples argues there is no indication "that any KBI testing was done in relation to the forgery or identity theft offenses to which [he] pled guilty." He asserts "[t]he only charges which would have required KBI testing were the controlled substance allegations, which were ultimately dismissed" in compliance with the plea agreement. The State essentially concedes any KBI lab testing was unrelated to the offenses for which Peeples was convicted. The State asserts "the KBI fee was unquestionably part of the investigation" but never explains whether any KBI lab test was performed, and if so, to which offense it related. The parties' arguments focus primarily on whether the fee can be imposed for lab testing in relation to a charge later dismissed. However, the problem we are faced with is the record contains no evidence that *any* testing was performed.

The statutory language of K.S.A. 2018 Supp. 28-176(a) requires the fee be imposed "*if* . . . laboratory services . . . *are provided*, in connection with the investigation." (Emphases added.) Peeples pled guilty to two counts of forgery and identity theft in 17CR107. The district court asked him to explain the factual basis for the offenses, which he did on the record, and Peeples never mentioned any lab testing. The State provided no information at the plea or sentencing hearings regarding any lab testing having been performed. Peeples did not stipulate or agree to the payment of the fee in his plea agreement. Peeples waived his right to a preliminary hearing; thus, there was no evidence presented therein showing tests were performed. Further, the probable cause affidavit submitted by the arresting officer does not indicate any lab tests were performed.

The plain language of K.S.A. 2018 Supp. 28-176(a) only allows for fees when "laboratory services . . . *are provided*." (Emphasis added.) This court must interpret the statute based on its plain language. See *Barlow*, 303 Kan. at 813. Although not explicit, our Supreme Court appeared to construe this language as requiring payment of the fee where such tests are, in fact, performed. See *State v. Goeller*, 276 Kan. 578, 584, 77 P.3d 1272 (2003), *overruled on other grounds by State v. Dickey*, 301 Kan. 1018, 350 P.3d

12

1054 (2015) (KBI lab fee required for each of the three separate tests performed in relation to three separate offenses for which Goeller was convicted). Here, the record contains no evidence showing any testing actually occurred. Accordingly, there was no basis for the district court to impose the fee.

The State acknowledges the KBI lab fee was not ordered at the time of sentencing and was just added to the journal entry. It further acknowledges if this was error it can be corrected by a nunc pro tunc journal entry. We agree. Since there is no indication any KBI lab testing was done in 17CR107, we remand to the district court with instructions to file an amended journal entry of sentencing without assessing the KBI lab fee. See K.S.A. 2018 Supp. 22-3504(2); *State v. Tafoya*, 304 Kan. 663, 666-67, 372 P.3d 1247 (2016) (journal entry indicating sentence different from the one pronounced from the bench is erroneous and must be corrected to reflect the actual sentence imposed).

*No* Apprendi *violation.*

Peeples also argues the district court violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution when it used his prior convictions to enhance his sentence without proving those convictions to a jury beyond a reasonable doubt, contrary to the United States Supreme Court's guidance in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Peeples recognizes the Kansas Supreme Court rejected this argument in *Ivory*, 273 Kan. at 46, but he includes the issue to preserve it for federal review. Because there is no indication the Kansas Supreme Court is departing from this position, this court is duty bound to follow established precedent. *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015); see *Raschke*, 289 Kan. at 912 ("We reject this claim as controlled by . . . [*Ivory*]. It requires no further discussion."). The district court properly used Peeples' criminal history to establish his sentence.

13

Affirmed in part, vacated in part, and remanded with instructions.

* * *

ARNOLD-BURGER, C.J., concurring:  I concur in the result.